Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER HAND,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>ACHILLION PHARMACEUTICALS, INC., NICOLE VITULLO, DAVID SCHEER, FRANK VERWIEL, JASON S. FISHERMAN, JOSEPH TRUITT, KURT GRAVES, MICHAEL D. KISHBAUCH, and ROBERT L. VAN NOSTRAND,<br><br>　　　Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Christopher Hand ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.　This is an action against Achillion Pharmaceuticals, Inc. ("Achillion" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between Achillion and Alexion Pharmaceuticals, Inc. ("Alexion") and Beagle Merger Sub, Inc. ("Merger Sub").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.[1]

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Achillion common stock.

---

[1] Indeed, the Board held a two-day in person meeting in New York, New York on September 26 and 27, 2019 to discuss, *inter alia*, "the potential entry into a strategic transaction with Alexion or Company A[.]"

7. Defendant Achillion is a clinical-stage biopharmaceutical company that discovers, develops, and commercializes small molecule drug therapies for immune system disorders. Achillion currently has two clinical-stage medicines in development, including danicopan (ACH-4471) in Phase 2 and ACH-5228 in Phase 1. Achillion has received Breakthrough Therapy designation for danicopan for treatment in combination with a C5 monoclonal antibody for patients with paroxysmal nocturnal hemoglobinuria (PNH) who are sub-optimal responders to a C5 inhibitor alone. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ Global Select Market under the ticker symbol, "ACHN."

8. Defendant Nicole Vitullo ("Vitullo") is Board Chair of the Company.

9. Defendant David Scheer ("Scheer") is a director of the Company.

10. Defendant Frank Verwiel ("Verwiel") is a director of the Company.

11. Defendant Jason S. Fisherman ("Fisherman") is a director of the Company.

12. Defendant Joseph Truitt ("Truitt") is President, Chief Executive Officer ("CEO"), and a director of the Company.

13. Defendant Kurt Graves ("Graves") is a director of the Company.

14. Defendant Michael D. Kishbauch ("Kishbauch") is a director of the Company.

15. Defendant Robert L. Van Nostrand ("Nostrand") is a director of the Company.

16. Defendants Vitullo, Scheer, Verwiel, Fisherman, Truitt, Graves, Kishbauch, and Nostrand are collectively referred to herein as the "Individual Defendants."

17. Defendants Achillion and the Individual Defendants are collectively referred to herein as the "Defendants."

## OTHER RELEVANT ENTITIES

18. Alexion is a "global biopharmaceutical company focused on serving patients and families affected by rare diseases through the discovery, development and commercialization of life-changing therapies." Alexion is incorporated in Delaware with principal executive offices located in Boston, Massachusetts. Alexion's common stock trades on the NASDAQ Global Select Market under the ticker symbol, "ALXN."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On October 16, 2019, Achillion and Alexion issued a press release announcing that they had entered into a definitive merger agreement whereby Alexion would acquire Achillion for $6.30 per share of Achillion common stock, with the potential for additional consideration in the form of non-tradeable contingent value rights to be paid to Achillion shareholders if certain clinical and regulatory milestones are achieved within specified periods. These include $1.00 per share for the U.S. FDA approval of danicopan and $1.00 per share for ACH-5228 Phase 3 initiation. As part of the Proposed Transaction, Alexion will acquire the "cash currently on Achillion's balance sheet. As of September 30, 2019, this was approximately $230 million[.]" The press release states, in pertinent part:

**Alexion to Acquire Achillion**

*- Adds clinical-stage portfolio of oral small molecule Factor D inhibitors to Alexion's pipeline –*

*- Provides opportunity to enhance treatment for PNH patients experiencing extravascular hemolysis (EVH), potential first-in-class C3 glomerulopathy (C3G) therapy & promising development platform for Factor D inhibition in additional alternative pathway complement-mediated rare diseases –*

*- Initial all-cash transaction for $6.30 per share; total transaction of up to $8.30 per share with potential additional contingent considerations –*

4

*- Conference call and webcast scheduled for today, October 16, 2019, at 8:00 a.m. EDT -*

October 16, 2019 06:30 AM Eastern Daylight Time

BOSTON & BLUE BELL, Pa.--(BUSINESS WIRE)--Alexion Pharmaceuticals, Inc. (NASDAQ:ALXN) and Achillion Pharmaceuticals, Inc. (NASDAQ:ACHN) today announced that they have entered into a definitive agreement for Alexion to acquire Achillion, a clinical-stage biopharmaceutical company focused on the development of oral small molecule Factor D inhibitors to treat people with complement alternative pathway-mediated rare diseases, such as paroxysmal nocturnal hemoglobinuria (PNH) and C3 glomerulopathy (C3G). Achillion currently has two clinical-stage medicines in development, including danicopan (ACH-4471) in Phase 2 and ACH-5228 in Phase 1.

\*   \*   \*

**Transaction Details**
The initial consideration of approximately $930 million, or $6.30 per share of Achillion common stock, will be funded with cash on hand. As part of the acquisition, Alexion will also be acquiring the cash currently on Achillion's balance sheet. As of September 30, 2019, this was approximately $230 million; the actual amount will be determined as of the transaction close. The transaction includes the potential for additional consideration in the form of non-tradeable contingent value rights (CVRs), which will be paid to Achillion shareholders if certain clinical and regulatory milestones are achieved within specified periods. These include $1.00 per share for the U.S. FDA approval of danicopan and $1.00 per share for ACH-5228 Phase 3 initiation.

Alexion's acquisition of Achillion is subject to the approval of Achillion shareholders and satisfaction of customary closing conditions and approval from relevant regulatory agencies, including clearance under the Hart-Scott Rodino Antitrust Improvements Act. Pending these approvals, the transaction is expected to close in the first half of 2020.

\*   \*   \*

**About Alexion**
Alexion is a global biopharmaceutical company focused on serving patients and families affected by rare diseases through the discovery, development and commercialization of life-changing therapies. As the global leader in complement biology and inhibition for more than 20 years, Alexion has developed and commercializes two approved complement inhibitors to treat patients with paroxysmal nocturnal hemoglobinuria (PNH) as well as the first and only approved

complement inhibitor to treat atypical hemolytic uremic syndrome (aHUS), anti-acetylcholine receptor (AchR) antibody-positive generalized myasthenia gravis (gMG) and neuromyelitis optica spectrum disorder (NMOSD). Alexion also has two highly innovative enzyme replacement therapies for patients with life-threatening and ultra-rare metabolic disorders, hypophosphatasia (HPP) and lysosomal acid lipase deficiency (LAL-D). In addition, the company is developing several mid-to-late-stage therapies, including a second complement inhibitor, a copper-binding agent for Wilson disease and an anti-neonatal Fc receptor (FcRn) antibody for rare Immunoglobulin G (IgG)-mediated diseases as well as several early-stage therapies, including one for light chain (AL) amyloidosis and a second anti-FcRn therapy. Alexion focuses its research efforts on novel molecules and targets in the complement cascade and its development efforts on the core therapeutic areas of hematology, nephrology, neurology, and metabolic disorders. Alexion has been named to the *Forbes'* list of the World's Most Innovative Companies seven years in a row and is headquartered in Boston, Massachusetts' Innovation District. The company also has offices around the globe and serves patients in more than 50 countries. This press release and further information about Alexion can be found at: www.alexion.com.

[ALXN-G]

**About Achillion Pharmaceuticals**
Achillion is a clinical-stage biopharmaceutical company focused on advancing its oral small molecule complement inhibitors into late-stage development and commercialization. Research has shown that an overactive complement system plays a critical role in multiple disease conditions including the therapeutic areas of nephrology, hematology, ophthalmology and neurology. Achillion is initially focusing its drug development activities on complement-mediated diseases where there are no approved therapies or where existing therapies are inadequate for patients. Potential indications being evaluated for its compounds include paroxysmal nocturnal hemoglobinuria (PNH), C3 glomerulopathy (C3G), and immune complex membranoproliferative glomerulonephritis (IC-MPGN). The company has received Breakthrough Therapy designation for danicopan for treatment in combination with a C5 monoclonal antibody for patients with paroxysmal nocturnal hemoglobinuria (PNH) who are sub-optimal responders to a C5 inhibitor alone. Each of the product candidates in the company's oral small molecule portfolio was discovered in its laboratories and is wholly owned. To advance its investigational product candidates into Phase 3 clinical trials and commercialization, the company plans to work closely with key stakeholders including healthcare professionals, patients, regulators and payors. More information is available at http://www.achillion.com.

[ACHN-G]

\*   \*   \*

Centerview Partners served as Achillion's exclusive financial advisor, while Skadden, Arps, Slate, Meagher & Flom LLP served as its legal advisor.

20. On November 5, 2019, Defendants filed with the SEC a Schedule 14A Preliminary Proxy Statement pursuant to Section 14(a) of the Exchange Act (the "Proxy Statement") in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

21. The Proxy Statement, which recommends that Achillion shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Achillion's financial projections; and (ii) the financial analyses performed by Achillion's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion.

22. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board of Directors and Reasons for the Merger; (ii) Certain Financial Projections; and (iii) Opinion of Achillion's Financial Advisor.

23. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Achillion shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

#### 1. Material Omissions Concerning Achillion's Financial Projections

24. The Proxy Statement omits material information concerning Achillion's financial projections.

25. The Proxy Statement provides that, "in connection with the Board of Director's evaluation of the Merger and other strategic alternatives, Achillion management prepared certain

long-range, risk-adjusted financial projections for the years 2020 through 2038 as a stand-alone company (the "Management Projections")."

26. The Proxy Statement provides a "table . . . summary of the risk-adjusted Management Projections on a non-GAAP basis[.]"

27. The Proxy Statement, however, fails to disclose the following concerning the Management Projections: (1) all line items used to calculate (i) Total Revenues, (ii) Total Gross Profit, (iii) Operating Income, and (iv) Unlevered Free Cash Flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

28. When a company discloses non-GAAP financial metrics in a Proxy Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

29. The disclosure of Achillion's projected financial information is material because it

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Nov. 14, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

would provide Achillion shareholders with a basis to project the future financial performance of Achillion and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Achillion and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

30. Accordingly, in order to bring the Proxy Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Management Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Proxy Statement not misleading.

31. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Achillion shareholders.

### 2. Material Omissions Concerning Centerview's Financial Analyses

32. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Centerview.

33. The Proxy Statement fails to disclose the following concerning Centerview's "*Selected Precedent Transactions Analysis*": (1) the individual inputs and assumptions underlying Centerview's selection of a reference range of "Transaction Values" of $400 million to $925 million; and (2) the reason for the inclusion of the proposed transaction between Ra Pharmaceuticals, Inc. and UCB S.A. with a transaction value of $2.191 billion, and the transaction between Therachon AG and Pfizer Inc. with a transaction value of $340 million.

9

34. The Proxy Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) all line items used to calculate the unlevered free cash flows of Achillion reflected in the Management Projections for the years from 2020 through 2038; (2) the implied terminal value of Achillion; (3) the basis for Centerview's assumption that Achillion's unlevered free cash flows would decline in perpetuity after December 31, 2038, at a rate of free cash flow decline year-over-year of 80.0%; (4) the individual inputs and assumptions underlying the range of discount rates from 11.0% to 13.0%; and (5) Achillion's fully diluted shares outstanding as of October 14, 2019.

35. The Proxy Statement fails to disclose Centerview's basis for its selection of a reference range of Enterprise Values of $250 million to $450 million in its "*Selected Public Company Analysis*[.]"

36. With respect to Centerview's analysis of premiums paid in the transactions selected by Centerview in its "*Selected Precedent Transaction Analysis*[,]" the Proxy Statement fails to disclose the premiums paid in each transaction utilized by Centerview.

37. With respect to Centerview's analysis of Wall Street analysts' stock price targets for Achillion, the Proxy Statement fails to disclose the following: (1) the individual price targets for Achillion observed by Centerview in its analysis; and (2) the sources of those price targets.

38. The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to Achillion shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without this information, the Company's shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in

determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Achillion shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

41. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

42. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

43. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged

herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 15, 2019                    Respectfully submitted,

**HALPER SADEH LLP**

By: /s/Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*